**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 18-cr-0481-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**2.    TIMOTHY HOWELL**,

    Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

Before the Court is Defendant Timothy Howell's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 108) ("Motion"). For the reasons that follow, the Court grants the Motion.

### I. BACKGROUND

On April 24, 2019, Howell pled guilty to: (1) conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture containing a detectable amount of cocaine; (2) conspiracy to launder money; and (3) aggravated identity theft. (ECF No. 52 at 1–12.) On December 2, 2020, the Court sentenced Howell to 42-months' imprisonment as to Counts 1 and 2, to be served concurrently, and 24-months' imprisonment as to Count 3 to be served consecutively to Counts 1 and 2, for a total of 66 months. (ECF No. 102 at 2.) Howell's sentence is to be followed by a total of four years of supervised release. (*Id*. at 3.) Law enforcement first arrested and detained Howell on July 18, 2018, and he has served 28 months of his sentence. (*Id*. at 1.)

Howell's scheduled release date is March 25, 2023, approximately 27 months from the date of this Order. (ECF No. 108 at 2.)

Howell filed his Motion on October 12, 2020 (ECF No. 108). He asserts that his ex-wife, Bethany Howell ("Ms. Howell"), the mother and caregiver of his three children—ages six, eight and nine—is unable to care for the children due to a severe medical condition. (*Id.* at 1.) Based on Ms. Howell's account of her medical history, confirmed by a letter from her physician, she suffers from stage IV cancer. (ECF No. 108-2 at 1.) Howell contends that he is the sole family member capable of providing care to his children. (ECF No. 108 at 2–3.) Howell therefore requests that the Court re-sentence him to time served and supervised release with the condition of home confinement for the remainder of his sentence. (*Id.* at 1.)

## II. ANALYSIS

### A.   Compassionate Release Framework

Howell invokes the Court's authority to grant what is commonly referred to as "compassionate release." The statutory basis for compassionate release is as follows:

> The court may not modify a term of imprisonment once it as been imposed except that—
>
> (1) in any case—
>
> > (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the

> unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction;
>
> * * *
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c).

**B.    Exhaustion of Administrative Remedies**

As stated above, a defendant must demonstrate that he has exhausted administrative remedies by making a request for compassionate release to the BOP, and either appealing a denial of the request or showing that 30 days elapsed since submission of the request.  18 U.S.C. § 3582(c)(1)(A).  This requirement is satisfied pursuant to the Court's Order of November 4, 2020, after the Government failed to respond to the Court's Order to Show Cause why it should not consider administrative remedies exhausted.[1]  (ECF No. 113.)  Accordingly, the Court proceeds to the issue of whether extraordinary and compelling reasons warrant Howell's release.

**C.    Extraordinary and Compelling Reasons: Family Circumstance**

In order to prevail in his Motion, Howell must demonstrate "extraordinary and compelling reasons" that are "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  One Sentencing Commission

---

[1] Howell stated in his Motion that he had filed a request with the BOP, but that FCI Sheridan refuses to provide him with the letter of denial or proof of his request, instead directing him to seek the letter of denial through the Freedom of Information Act.  (ECF No. 108 at 5.)

3

policy statement explains that such reasons exist in the case of the "death or incapacitation of the caregiver of the defendant's minor child or minor children." U.S.S.G. § 1B1.13 cmt. 1(C)(i). The BOP's Program Statement 5050.50 provides that incapacitation may be based on a severe illness, such as cancer. *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)*, Federal Bureau of Prisons Program Statement 5050.50 at 7 (Jan. 17, 2019), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. Program Statement 5050.50 also advises consideration of whether the defendant is the only family member capable of caring for their children. *Id.*

Ms. Howell's course of treatment has required her to undergo chemotherapy, radiation therapy, and multiple surgeries to remove malignant tumors. (ECF No. 108-1 at 1–2.) These treatments have resulted in severe weakening of her legs, such that at the time Howell filed his Motion, on October 12, 2020, Ms. Howell relied on crutches and a cane for mobility. (*Id.* at 2.)

On October 16, 2020, Ms. Howell underwent hip replacement surgery. (ECF No 111-2 at 1.) While recovering from her surgery, Ms. Howell struggles with mobility and is unable to perform basic tasks such as walking up stairs or using the bathroom without assistance. (*Id.*) During this time, the children are residing with a non-family member childcare provider. (*Id.*) There is little indication that Ms. Howell's condition is likely to improve in the near future, if at all. Her physician's letter states that she will likely require further treatment, and Ms. Howell indicates that her most recent medical examination revealed more potentially cancerous tumors. (ECF Nos. 108-2 & 111-2.)

Howell states that the current arrangement with the childcare provider is not sustainable, and that if he is not released, the children will be separated from family and placed in the foster care system. (ECF No. 108 at 3.) Ms. Howell's parents are unable to care for the children due to their advanced age and medical conditions of their own. (*Id.*) Ms. Howell's father suffers from Parkinson's disease, and her mother must care for him. (*Id.*) The only other relatives are the children's maternal aunt and uncle, who live in a different state and do not have the financial resources to care for the children. (*Id.*)

The Government does not dispute Ms. Howell's account of her condition, but contends that her limited mobility does not render her incapacitated, because she has managed her children's care to this point in time. (ECF No. 110 at 7.) As stated, however, Ms. Howell's medical issues have worsened since the time of the Government's response. (ECF No. 111-2.) Further, the letter from Ms. Howell's doctor, and her own account of her medical history, indicate that recovery from her hip replacement surgery is unlikely to be the end of her intensive course of treatment. (*Id.*; ECF No. 108-2.) The Court determines that Howell has established extraordinary and compelling circumstances, as Ms. Howell's severe medical conditions render her incapacitated and incapable of caring for three young children.

**D.    Section 3553(a) Analysis**

Having found that extraordinary and compelling circumstances exist, the Court must still determine that the 18 U.S.C. § 3553(a) factors weigh in favor of altering Howell's sentence. *See* 18 U.S.C. § 3582(c)(1)(A). Particularly relevant to the Court's

analysis are the first and second factors, under which the Court considers

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(1)–(2).

During his incarceration, Howell appears to have been an exemplary inmate. He has volunteered as a tutor for other inmates, served as a companion for inmates on suicide watch, and has not committed any disciplinary infractions to the Court's knowledge. (ECF No. 108 at 6.) Howell's commitment to self-improvement and serving others weighs in his favor. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) (post-sentencing conduct is relevant to § 3553(a) analysis in any re-sentencing proceeding).

The Government also argues that the nature and circumstances of Howell's underlying offense counsel against relief. (ECF No. 110 at 9.) Specifically, the Government notes that Howell purchased and distributed illegal drugs over the internet for over one year. (*Id.*) The Court agrees that Howell's crimes were serious and extensive. His activities, however, did not involve violence, the threat of violence, or weapons. Given the nature of Howell's crimes and his demonstrated commitment to

rehabilitation since his incarceration, the Court finds that the first factor favors his release.

The Government further contends that commuting Howell's sentence would not reflect the retributive goals of the criminal justice system. (ECF No. 110 at 9.) The Government notes that the Sentencing Guidelines for Howell's offenses recommended a sentence well above the 66 months to which the Court ultimately sentenced Howell. (*Id.*) The Government argues that further shortening the sentence to the 28 months that Howell has served would not sufficiently punish, deter or rehabilitate him. (*Id.*)

Again, the Court recognizes that Howell committed serious offenses, and finds that this is a close case. Howell's sentence of 66 months was a significant departure from the Sentencing Guidelines, and this reduction would represent an even greater disparity. As detailed in the Presentence Report, however, compelling reasons supported the Court's decision to depart from the Sentencing Guidelines. (ECF No. 60.) The Court finds that in these circumstances the additional sentence reduction sought by the Motion will not offend the goals of the sentencing statute, given that a sentence of nearly 2 ½ years will still reflect the seriousness of the offense, and it will afford adequate specific deterrence for Mr. Howell.

Accordingly, the Court finds that a sentence of time served (28 months) with the original terms of supervised release is consistent with "the nature and circumstances of the offense," § 3553(a)(1); [and] "the need for the sentence imposed * * * to reflect the seriousness of the offense [and] * * * afford adequate deterrence to criminal conduct," § 3553(a)(2)(A)–(B).

The terms of Howell's supervised release will provide a restriction on his liberty which is sufficient but not greater than necessary to punish him for his conduct while minimizing harm to his three young children. The Court does not believe that an additional condition of home confinement is necessary. This case presents extraordinary extenuating circumstances, and given the fairly unique facts of this case, justice more than amply supports the Court's decision to exercise its discretion to order the release of Mr. Howell at this time.

## III. CONCLUSION

For the foregoing reasons, Howell's Motion (ECF No. 108) is GRANTED. The Court ORDERS as follows:

1. Howell's previously imposed sentence of 66 months of incarceration is reduced to a sentence of TIME SERVED, to be followed by the 4-year term of supervised release previously imposed by the Court (ECF No. 102 at 3–5);

2. **This Order is stayed for not more than 10 calendar days from its date of entry**, for the verification of Howell's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure Howell's safe release;

3. Howell shall be released as soon as a residence is verified, a release plan is established by the appropriate U.S. Probation Office, appropriate travel arrangements are made, and it is safe for Howell to trave. There shall be no delay in ensuring travel arrangements are made; and

4.      If more than 10 days are needed to make appropriate travel arrangements and ensure Howell's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended.[2]

Dated this 10th day of December, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge

---

[2] Howell represents that he plans to live with Ms. Howell's parents, who reside in the Western District of Washington. The U.S. Probation Office of the Western District of Washington will therefore need to accept a transfer of Howell's supervision before he may relocate there.